## LEVINE v. UNITED STATES.
### No. 45225.

Court of Claims.
April 5, 1948.

Horace S. Whitman, of Washington, D. C. (Louis Sanders, of New York City, was on brief), for plaintiff.

T. Hayward Brown, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen. (William W. Fleming, of Washington, D. C., was on brief), for defendant.

Before JONES, Chief Justice, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

LITTLETON, Judge.

Plaintiff is, and for many years has been, engaged in the manufacture of quilts, pads and mats, with principal office and factory at New Haven, Connecticut. He sues to recover $100,000 as reasonable compensation for the alleged infringement of certain claims of two patents, Nos. 2,021,513 and 2,033,989, issued to him November 19, 1935 and March 17, 1936, respectively. Claims 1, 3, 5, 7, and 8 of the first patent and 1 and 2 of the second patent are in suit. Both patents resulted from an application filed August 25, 1934, which was subsequently divided April 26, 1935. Both patents relate to the curing of concrete, the claims of the first being directed to a process for treating freshly laid wet concrete with cotton-filled pads or mats and those of the second being directed to the cotton pad or mat per se, utilized in the method of the first patent. The case was heard and submitted on the questions of validity and infringement of the claims in suit under Rule 39(a).

The evidence shows and we have found (findings 16-20) that the defendant had manufactured for its use certain quantities of cotton mats to be used for curing concrete pavements or roads and that the structure and intended use of these mats come within the phraseology of the claims in issue of the two patents above-mentioned.

Defendant contends, however, that plaintiff was not the first and original inventor of the subject matter of the claims in suit and that the claims in issue are invalid because of lack of novelty, prior knowledge and use. We have found these defenses to be sustained by the facts established by the evidence (findings 27-35).

As we have said, plaintiff's application, upon which the patents in suit were finally issued, was filed August 25, 1934. Prior thereto, in July 1933, there appeared an article entitled "Cotton Mats for Curing Concrete" in a publication entitled "Public Roads, a Journal of Highway Research," published by the United States Department of Agriculture. The evidence shows that this article disclosed to those skilled in the art a mat structure for curing concrete, constructed of one or more plies of raw cotton inclosed by a cover of loosely woven cotton cloth. A photograph in this article also showed the cover held in place, with reference to the cotton filling, by means of tufting or stitching at various points. The article further disclosed the idea of dampening or wetting mats of the character disclosed and placing them on freshly laid concrete for the purpose of curing the same. (See finding 22.)

On September 29, 1933, the plaintiff, then trading as the New Haven Quilt & Pad Company, having seen the abovementioned article in the publication Public Roads, wrote the U. S. Bureau of Public Roads (finding 9), for certain information concerning the intention of the Government of specifying the use of cotton padding in road-building construction, and requesting that, if possible, he be furnished a sample of such padding. The Bureau replied on October 5, that it had no sample of the mats available, but sent plaintiff a copy of the July 1933 issue of the publication containing the article above-mentioned and, also, a set of specifications for cotton mats for curing concrete which the Bureau had prepared. The printed article went into considerable detail as to tests which had been made on various styles and thicknesses of cotton mats and, in addition to containing photographs and drawings showing the

structure of the mats, stated that samples of cotton mats containing 3, 6 and 9 plies of cotton, had been submitted for test purposes by the Texas State Highway Department.

About ten months after the receipt of this information plaintiff filed his application which materialized into the first patent. The Patent Office, on August 1, 1935, rejected all of the claims in the application as unpatentable in view of the July 1933 article in the publication "Public Roads." Thereupon, plaintiff, on September 23, 1935, executed and filed with the Patent Office an affidavit, which is quoted in finding 10, as a result of which the patents in suit were issued. In this affidavit plaintiff stated, among other things, that in October 1932 he used the mats described in his specification for curing concrete laid by him; that during November 1932 he corresponded with the Highway Bureaus of ten different states, one of which was the State of Texas; that he sent samples to the Highway Bureaus of these states and asked them to specify these pads as permissible in use of curing concrete on road work; that in April 1933 he commenced producing these pads on a commercial scale for sale; that "I have seen the publication "Public Roads" of July 1933, and the illustrations therein contained are the pads manufactured by me. For the State of Texas at the request of the Texas Highway Department, I make my pads a little different than for other states"; and that "The pads or mats referred to in this affidavit as having been used by me since October 1932, were the same as those specified in my petition and specification."

From a study of the evidence submitted in the trial of this case, we are convinced that the statements made by plaintiff in the affidavit mentioned were not true. Plaintiff may have made and used a cotton pad or mat for curing concrete, but if he did, we are convinced from the record that such use was subsequent to September 1933. Plaintiff was unable to prove that during 1932 he corresponded with the Highway Department of any state, or with anyone else, concerning cotton mats for curing concrete. He could show only a letter written to the State Highway Department of Texas on October 16, 1933, which referred to the July 1933 issue of Public Roads, and one

written to the State Highway Department of Pennsylvania on October 25, 1933. We think it is significant that plaintiff's correspondence with State Highway Departments and with his salesman or field agent began at the time he wrote the U. S. Bureau of Public Roads on October 16, 1933, acknowledging the receipt of the July 1933 issue of Public Roads and the copy of Government specifications for cotton mats for curing concrete. In none of his correspondence did plaintiff intimate that he had made and successfully used a cotton mat or pad for curing concrete such as that described in the July 1933 issue of Public Roads, although his letters to the Government, the State of Texas and his salesman or field agent, show that he was endeavoring to interest the Government and State Highway Departments in the use of such mats and in allowing him to manufacture and supply the same. Plaintiff wrote a number of letters to the Bureau of Public Roads, his letter of October 16, 1933, stating, in part, as follows:

"Your reply of Oct. 5th which was in response to our letter to you of Sept. 29th received. We certainly want to thank you for the most complete response and also the Public Road journal which was received today. It goes into full explanation and really gives more information that [than] we had dared to expect on a first reply.

"We are extremely anxious to extend ourselves in this project of manufacturing padding for curing concrete roads. Primarily, we are under all probability in a better position to manufacture that type padding than any other concern in the country as we are specialized for making all kinds and types of odd padding for different uses.

"We could make up this padding in a thickness equivalent to your specifications of 3-ply, full size of the ordinary road burlap which is now used which we understand is 12 feet wide and 30 feet long, completely incased in 7 oz. Osnaburg or 8 oz. burlap and sewn securely in straight lines every 3" apart so as to keep the filling perfectly uniform and intact. It is the writer's idea that this padding really could be gotten down to a price of about 3½ cents a sq. ft. sewn with the 7 oz. Osnaburg on both sides.

If it were practical and permissible to use 8 oz. burlap, it would bring the price down to about 2½ cents a sq. ft. Considering the good it would do, we believe that that price would be more than in line, bearing in mind that the padding has to be gotten down to a reasonable price so as to make it practical.

"It is further our opinion that the same padding could be used over several times. Another idea dawned upon the writer which is that as it is cotton padding it seems as though there are times in the early Spring and late Fall that the padding could be put on the roads to keep the concrete from freezing on cold nights."

■ During a hearing in this case plaintiff, when confronted with the affidavit filed with the Patent Office, stated in substance that the dates therein set forth were a year too early (finding 11). At a subsequent hearing, however, he testified and undertook to show that he first used the cotton mat in connection with the laying of a concrete walk about May or June 1932. We are not convinced by the testimony offered that plaintiff made and used the cotton mat at the time claimed and have found that plaintiff's evidence does not establish the date of conception or reduction to practice of the subject matter of his invention prior to July 1933, the date of the Public Roads publication cited against his application by the Patent Office (finding 14).

Were we able to find that plaintiff made and used a cotton mat as he now claims, we would nevertheless be compelled to find the claims of the patents in issue to be invalid because anticipated by prior invention, public knowledge and use. The record clearly establishes the fact, and we have so found, that as early as February 1932, William P. Tompkins, of Texas, had conceived the invention defined by the claims of the two patents here involved and had manufactured a number of road curing cotton mats embodying such conception which were used in public for industrial purposes in curing a concrete roadway (findings 29-34).

Plaintiff is not entitled to recover and his petition is, therefore, dismissed. It is so ordered.